UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ADVISOR'S CAPITAL INVESTMENTS, INC. | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | Civil Action No. 04-10597-RCL |
| | ) | |
| v. | ) | |
| | ) | |
| CUMBERLAND CASUALTY AND SURETY COMPANY, I.G.I.C. | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |

PLAINTIFF'S MEMORANDUM IN SUPPORT OF OPPOSITION MOTION

Defendant IGIC Management Company, Inc. (hereinafter "IGIC"), the exclusive agent and co-defendant of Cumberland Casualty and Surety Company (hereinafter "CCSC") has pursuant to Fed.R.Civ. P. 12(b)(2) and (6) filed a motion to dismiss IGIC from the present action.

## FACTS

Advisor's Capital Investments, Inc. (hereinafter "ACI") is a wholly owned subsidiary of Advisor's Capital Corp. (hereinafter "ACC"). Both ACC and ACI are Delaware corporations and have never been Connecticut corporations. In IGIC's motion and memo it is falsely stated that ACI is a Connecticut corporation. CCSC made the error of denoting on the policy contract that ACI was a Connecticut corporation but very

quickly ACI discovered the error and through amendment this was corrected (see Exhibit A).

ACI has offices in Massachusetts, Connecticut, and Florida. IGIC/CCSC have always known that ACI maintained an office in Massachusetts via ACI's ADV (see Exhibit B). The majority of the shareholders for ACC/ACI are Massachusetts residents and three of the four members of the board of directors are Massachusetts residents (see Exhibit C).

IGIC is the exclusive agent of CCSC. CCSC is licensed to do business in Massachusetts (see Exhibit D). CCSC/IGIC have done business and solicited business in Massachusetts directly related to the business in question in this present action (see Exhibit E). Although they have stated in their Memorandum and attached affidavits that defendants "do not solicit business in Massachusetts" the facts indicate that they have (see Exhibit E). Moreover, although IGIC does not appear to maintain a license to do business in Massachusetts, the facts indicate they either did not need a license to conduct the business that they have conducted or are in violation of law for conducting business without a license. This is so because IGIC/CCSC have maintained a RIA policy for Loughman Financial formerly of Plymouth, Massachusetts.

Mr. Loughman (the principal for the company) was in fact related to ACI in that he was a former advisor representative for ACI. Mr. Loughman left ACI and started Loughman Financial and IGIC/CCSC maintained a RIA policy with him for sometime in Plymouth, Massachusetts. In IGIC's Memorandum they have stated in regard to Mr. Loughman that the "customer came to IGIC, and in any event, had no relation to ACI."

This is false. As stated above Mr. Loughman was an advisor representative of ACI and IGIC was fully aware of this.

The IGIC/CCSC ties to Massachusetts are more than substantial in that underlying the ACI/IGIC/CCSC policy are fifty (50) Massachusetts residents with seventy-five (75) accounts warranted through CCSC and these people are designated as intended third party beneficiaries under the policy (see Exhibit F). IGIC has requested to be explicitly designated as an "interested party" as to these fifty (50) Massachusetts residents and has asked to receive duplicate monthly account statements for these Massachusetts resident's accounts.

IGIC and CCSC issued seventy-five (75) certificates to these fifty (50) Massachusetts residents acknowledging their name, address, and intended third party beneficiary status. Both IGIC and CCSC are signified on the certificates themselves. Moreover, these Massachusetts residents signed all the contracts related to the ACI/IGIC/CCSC policy making them intended third party beneficiaries under this contract in the state of Massachusetts. Many of these clients would have signed the contracts at the ACI Massachusetts office. Of all the states where ACI maintains these warranted accounts under the policy in question Massachusetts residents maintain the second most of all.

Further, IGIC/CCSC derives substantial revenue from these Massachusetts residents in that IGIC/CCSC bill ACI for the premiums and in turn ACI bills the Massachusetts residents. Due to ACI's operational expenses, ACI derives little profit for this insurance. As such, these Massachusetts residents are purchasing the risk insurance as ACI is essentially serving only as an intermediary. In other words, these

Massachusetts residents are the ones paying for the insurance and they are the ones the insurance is to protect.

Finally, although Florida maintains the most of these warranted accounts next to Massachusetts, Massachusetts would be the most convenient location for litigation to take place for the Plaintiff due to its limited financial resources, because much of the documentation related to the suit is situated in Massachusetts, and because most of the board of directors are situated in Massachusetts (who would likely be material witnesses).

Most importantly, because it appears that the Florida regulatory authority who approved CCSC to due business for the five year term under the contract was relied upon by ACI and this same agency is now the Receiver for CCSC, it would be more prudent that an unattached and non-bias judicial entity outside of Florida preside over the legal issues in question. Nevertheless, whether this case is transferred to federal court in Florida as opposed to state court, the issues of bias and conflict of interest could still exist for either forum under the present circumstances. In the interests of prudence and to avoid the appearance of a conflict of interest it would be in the best interests of all third party beneficiaries under the policy (including Florida residents) that this case be decided in a forum outside of Florida.

## LEGAL ANALYSIS

### a. Personal Jurisdiction

In order to establish personal jurisdiction over an out of state defendant, plaintiff must show that the Massachusetts Long Arm Statute M.G.L.A. 223A § 3 grants such

authority and that the granting of this authority comports with due process concerns under the U.S. Constitution. Clark v. City of St. Augustine, Florida, 977 F. Supp. 541 (D.Mass. 1997).

1. Massachusetts Long Arm Statute – M.G.L.A. 223A § 3

The relevant portion of the Massachusetts Long Arm Statute M.G.L.A. 223A is as follows:

§ 3. Transactions or conduct for personal jurisdiction

A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's

(a) transacting any business in this commonwealth;
(d) causing tortuous injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth;
(f) contracting to insure any person, property or risk located within this commonwealth at the time of contracting;

Under (a), (d), or (f) of the above, plaintiff can readily establish personal jurisdiction. Beginning with (a) "The question what activities constitute the transaction of business…must be decided on the particular facts involved." Droukas v. Divers Training Academy, Inc. 375 Mass. 149, 156-157 (1978), Stanton v. Am General Corp., 50 Mass. App. Ct. 116 (2000).

"The 'transacting any business clause [in § 3 ] has been construed broadly.' Heins v. Wilhelm Loh Welzlar Optical Mach., 26 Mass. App. Ct. 14, 17 (1988), relying on Good Hope Indus., Kleinerman v. Morse, 26 Mass. App. Ct. 819, 824 (1989), Tatro v. Manor Care, Inc., 416 Mass. 763, 767 (1994). The statutory requirement of 'transacting any business' for exercise of personal jurisdiction is general and applies to any

purposeful acts by an individual, whether personal, private, or commercial. Nile v. Nile, 432 Mass. 390 (2000), Micro Networks Corp. v. HIG Hightec, Inc., 195 F. Supp.2d 255 (D. Mass. 2001).

'Transacting business' provisions of this section reaches any purposeful act by individual, whether personal, private, or commercial; even isolated, 'one-shot' transaction with little impact on commerce of Massachusetts may constitute transacting business, although cause of action must arise from that transaction of business.' A-Connoisseur Transp. Corp. v. Celebrity Coach, Inc., 742 F. Supp. 39 (D.Mass. 1990).

"The transacting of business test is very liberally construed. It 'embraces any purposeful acts performed in Massachusetts…As to the second component, that the plaintiff's claim must 'arise from' the contact, Massachusetts adheres to a similarly liberal construction, preferring a 'but for' or 'train of events' test." Foster-Miller, Inc. v. Babcock & Wilcox Canada, 848 F. Supp. 271, 276 (D.Mass. 1994).

Applying the above law to the facts we must first acknowledge the simple fact that IGIC is the exclusive agent of CCSC and CCSC is licensed not only to do business in Massachusetts but they refer to themselves (as advertised on their internet web site) as maintaining "agencies across the United States." As the exclusive agent to CCSC, IGIC is intertwined intimately with CCSC. IGIC performs most of the administrative tasks needed to facilitate CCSC's warranty program. There is essentially a blur between where the line from IGIC exists and where CCSC exists. As such, any notions of corporate separateness should be disregarded.

Corporate separateness is disregarded when:

> **There is a confused intermingling of activity of two or more corporations engaged in a common enterprise with substantial disregard of the separate nature of the corporate entities, or serious ambiguity about the manner and**

**capacity in which various corporations and their respective representatives are acting. [My Bread Baking Co. v. Cumberland Farms, Inc., 353 Mass. 615, 619 (1969); Parmenter v. Hyundai Motor Company et al. 1995 WL 809544]**

Clearly, this licensed status of CCSC and IGIC's status as the exclusive agent of CCSC is enough to confer personal jurisdiction in Massachusetts. It is important to note that the product that both IGIC and CCSC has offered to ACI and its customers is quite unique. This unique status must be acknowledged in examining the contacts made by these entities to Massachusetts. As the law states personal jurisdiction is to be determined on the particular facts and on a case by case basis.

As IGIC and CCSC have functioned in a manner where they are essentially the same entity the licensed status of CCSC in Massachusetts should vicariously be applied to IGIC if the law as delineated by My Bread and Parmenter is to have meaning. However, even if we ignore IGIC's exclusive agency relationship with CCSC and CCSC's license to do business in Massachusetts there still exists ample facts to show that IGIC has sufficient contacts with Massachusetts in order to confer personal jurisdiction.

First, CCSC/IGIC have sold a RIA policy to Loughman Financial in Plymouth, Massachusetts. This they have admitted. CCSC/IGIC serviced Loughman Financial for some time. Mr. Loughman was related to ACI in that he was an advisor representative of ACI and then started Loughman Financial. Mr. Loughman was involved with the CCSC/IGIC warranty program even when he was a representative for ACI.

Throughout 2001 Mr. Koyen of IGIC communicated from Florida to Mr. Howe in Massachusetts concerning solicitation of CCSC business for ACI via phone and e-mail (see Exhibit E). Additionally, CCSC/IGIC obviously knew of the Massachusetts link via ACI's ADV (see Exhibit B), which shows that there was an office there.

Another important fact is that of all the clients that ACI sells this warranty program to, Massachusetts residents make up the second most of all. There are fifty (50) Massachusetts residents that have purchased this warranty. IGIC specifically requested that they be denoted as an "interested party" to these fifty (50) Massachusetts residents and receive duplicate monthly statements from them.

This contact alone should be enough to confer jurisdiction. As the law states "any purposeful act" whether personal, private or commercial or even an isolated one-shot transaction with little impact on commerce of Massachusetts may constitute transacting business. A-Connoissseur Transp. IGIC made a purposeful act to be designated an "interested party" to not one but all fifty (50) Massachusetts residents for the purposes of facilitating this warranty program. IGIC has maintained this "interested party" status for a number of years.

If we examine whether the cause of action arises from the acts of IGIC the answer is clearly yes. Without the ACI/CCSC/IGIC policy contract the ties to Massachusetts would not exists. Hence, "but for" IGIC's solicitations these Massachusetts contracts would not exist. Again, the warranty program is unique and all three parties must act upon these Massachusetts clients in order for the warranty program to function as designed. Without clients to buy the CCSC/IGIC warranty through ACI the program itself could not exist.

When a Massachusetts client purchases the warranty through ACI (as the intermediary), a certificate is issued with the name and address of the client who the warranty is insuring (see Exhibit G). This without a doubt places CCSC and IGIC on notice of the Massachusetts contact. These seventy five (75) certificates issued by them

acknowledging fifty (50) Massachusetts residents as an intended third party beneficiary on the contract makes it unquestionable that not only have they transacted business in Massachusetts but where fully aware that they were maintaining contacts in Massachusetts.

As these contracts or contacts with the Massachusetts residents are the underpinnings to the cause of action it is obvious that these contacts or contracts with Massachusetts arises from the IGIC/CCSC transacting business in Massachusetts. These Massachusetts residents and ACI are the ones paying for the IGIC/CCSC policy. IGIC/CCSC is receiving most of the money under the premium bills to these Massachusetts residents.

Further, as the majority of the ACI/ACC shareholders are Massachusetts residents and as the vast majority of the board of directors of ACI/ACC are Massachusetts residents and as ACI has an office in Massachusetts it is also clear that as a result of IGIC's contacts to Massachusetts as they relate to the business transactions in question, that they have caused damage in Massachusetts to ACI.

As such, the requirements of M.G.L.A. 223A § 3 (a) are fully satisfied and as such on this basis alone personal jurisdiction under the Massachusetts long arm statute exists. However, if we ignore § 3 (a) and only examine (d) we again can maintain personal jurisdiction.

Under M.G.L.A. 223A § 3 (d) it states that personal jurisdiction exists if defendant causes tortuous injury in Massachusetts by an act or omission outside of Massachusetts if the defendant regularly does or solicits business, or engages in any other

persistent course of conduct, or derives substantial revenue from goods or services rendered in Massachusetts. Clearly, under (d) personal jurisdiction exists as to IGIC.

As IGIC derives the most from the premiums billed to the Massachusetts residents (more than CCSC and more than ACI) and Massachusetts residents make up the second most of these warranted accounts holders it is most certain that the requirement under (d) is met. As IGIC claims it is the exclusive agent and the party who administrates the warranty program and are not the insurer as they have stated in their brief, then what is it that IGIC does for all the money it is paid? Undoubtedly, if we are not to construe IGIC as a party to the insurance contract then they are at the least providing a service or administrative services to Massachusetts via the warranty program.

American Home Assur. Co. v. Sport Mask, Inc. 808 F.Supp. 67 (D.Mass. 1992) has established that providing insurance can mean providing services. "It is also reasonably foreseeable that the insured's contracting to assist in the defense will require acts in the commonwealth that may reasonably be described as 'supplying services…in this commonwealth.'" American Home at 75.

IGIC, as an interested party to these Massachusetts warranted accounts and residents they derived substantial revenue for these administrative services that they provided. Therefore, taken alone the facts clearly establish that personal jurisdiction exists as to (d) under M.G.L.A. 223A § 3.

Again if we ignore (a) and (d) under M.G.L.A. 223A § 3 and only examine (f) personal jurisdiction can be established under the facts in this case. In (f) it states that personal jurisdiction exists as to a defendant if the cause of action arises from the defendant contracting to insure any person, property or risk located within this

commonwealth. First, obviously what is being sold here is insurance to cover the risk as to investment principal. This is somewhat of an uncommon and unique form of insurance but insurance nonetheless. The certificates that are issued to the Massachusetts residents contain the names of both IGIC and CCSC.

There has been ambiguity over what responsibilities are delegated to CCSC and those delegated to IGIC. They both seem to share in the administrative functions used to facilitate this warranty program. It is also apparent that as the premiums are billed to the respective clients, IGIC seems to reap the most financial gain. As such, IGIC is a party to this policy contract as they have been extensively involved from beginning to end. Moreover, IGIC was the one who came up with the idea of this warranty mutual fund program and sold it to ACI and then brought in CCSC involved as their principal.

If IGIC is construed as a non-party then at the least under the principals of quasi-contract they should be seen as a contracting party based on their extensive involvement and the large sum of revenue they derived from this program they invented. It is clear that risk is being insured in Massachusetts as observed by Exhibit F and G. It is also clear that IGIC is a party to this policy contract based on the services rendered and the revenue they receive.

It is stated in American Home Assur. Co. as follows:

> **Does subsection (f) extend jurisdiction over nonresident insurers only, and not over nonresident insureds? Though the issue is reasonably debatable, I conclude that the interpretation...Is that each party to a contract of liability insurance covering risks to litigation in Massachusetts courts is a person 'contracting to insure...[a] risk located within this commonwealth at the time of contracting.' Both parties undertake obligations that are to be performed in the commonwealth –e.g., the insurer to defend and the insured to assist and cooperate. This meaning might have been expressed more clearly by a phrase such as 'contracting with respect to insurance' rather than 'contracting to insure.' [American Home Assur. Co at 76]**

As IGIC maintains an intricate relationship within this warranty program along with CCSC and ACI, it is most obvious that they are a party to this contract. Again, in examining the unique form of insurance and IGIC's unique role in the facilitation of the program and risk insurance inherent in the program itself, it must be concluded that IGIC is just as much as party to this as CCSC and ACI are a party to the warranty program. Therefore, (f) of M.G.L.A. 223A § 3 taken alone is clearly sufficient in establishing personal jurisdiction over IGIC.

Hence, taken (a), (d), and (f) individually or collectively it must be found that personal jurisdiction is said to exist as to defendant IGIC.

2. Due Process Clause of the United States Constitution

In addition to establishing the requirement under M.G.L.A. 223A § 3 a plaintiff must also establish that the defendant's due process rights under the U.S. Constitution have not been infringed.

The law has interpreted this to mean "Where a plaintiff has established that a defendant has purposefully established such minimum contacts with a forum state that it can expect to be haled into that state's courts, still 'the exercise of personal jurisdiction over the defendant must comport with fair play and substantial justice.'" Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476, (1985); Foster-Miller, Inc. at 277.

"In assessing whether an assertion of personal jurisdiction satisfies due process, a district court, in this Circuit, is directed to weigh certain 'Gestalt' factors. These are:

'(1) the defendant's burden of appearing; (2) the forum states's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantive social policies.'" United Elec., Radio & Mach. Workers of America v. 163 Pleasant St. Corp., 987 F.2d 39 at 46 (1993); Foster-Miller at 277.

Applying the facts to the law above we see that in (1) the present forum imposes only a slight hardship upon defendant. IGIC has presented no evidence that it maintains financial issues which would cause it to be unable to hire capable lawyers. The fact that they swiftly were able to hire the law firm of Hare & Chaffin demonstrates the burden on them is minimal. The same cannot be said of plaintiff. Due to the present situation ACI maintains financial issues making the imposition of bringing the lawsuit in Florida burdensome (see Exhibit C).

For the second factor Massachusetts maintains a strong interest in adjudicating the suit here because of the fifty (50) residents and their risk of losing their insurance and potentially their retirement funds plus ACI is heavily tied into Massachusetts via shareholders and board members. From this perspective Massachusetts has a much greater interest in the present litigation than Florida.

For the third factor, again due to plaintiff's limited resources Massachusetts is the forum that is the most convenient and effective. If plaintiff were forced to litigate in Florida the hardship placed on them would be extreme. For the fourth factor Massachusetts again would be the most appropriate forum. The reason for this is due to the facts in this case. As the state of Florida approved CCSC to do business for the whole

five (5) years and said nothing about CCSC claims paying ability and as ACI depended upon the state of Florida's regulatory agency approval of CCSC over the five (5) years to continue to pay premiums it would be improper for a Florida state or even federal court to preside over the issue therein for conflict of interest reasons.

Presently, the Receiver for CCSC is the same agency that gave them approval for these five (5) years. Moreover, the Receiver has been in charge of the company since late February. ACI has submitted claims prior to this time and over twenty since the Receiver has been in charge. To date no claims have been paid and ACI has done nothing wrong. Further, although there has been a court order of a stay of proceedings, the Receiver has instructed CCSC former counsel to file a motion to dismiss ACI's present action.

Clearly, in the interests of justice and to avoid even the appearance of a conflict of interest or bias and due to the number of people involved it would be in everyone's best interest that any legal issue be determined by a judicial forum outside of the state of Florida. Again, as to factor number five for the aforementioned reasons also the social policy here is clearly that an outside forum adjudicate any legal issue therein.

Therefore, there is no doubt that both personal jurisdiction under the Massachusetts long arm statute is existing and that conferring this personal jurisdiction does not infringe any due process concerns and does comport with fair play and substantial justice.

b. <u>12b(6) Failure to state a claim</u>

Defendant has also claimed that because IGIC is not a party to the contract none of the allegations are supported under the law. This assertion is without merit. IGIC is a

contracting party if not explicitly they are at the very least under a quais-contract theory due to their heavy involvement in the warranty program and the amount of revenue they receive. As far as the representation that they made they were also made to members of the board of directors on the phone, e-mail, and mail in Massachusetts. Moreover, the majority of the damage based on these representations, would be felt in Massachusetts. As such, plaintiff's M.G.L.A. ch.93A claim as well has been appropriately plead.

Moreover, the averments described within the counts of plaintiff's Complaint sufficiently describe IGIC's role within the each respective count to satisfy the notice pleading requirement maintained within the Federal Rules of Civil Procedure. Further, as to the count for misrepresentation the count clearly alleges all sufficient facts and legal elements to satisfy the requirements delineated within the Federal Rules of Civil Procedure.

First, the averments contained in the misrepresentation count uses the word "Defendants" (plural) ten (10) times within this count. As there exists only two defendants clearly this logically means IGIC and Cumberland. Additionally, all the facts and legal elements are supplied within this count to establish a misrepresentation claim. The elements of a misrepresentation claim are that a plaintiff must show a false statement of a material fact made to induce the plaintiff to act, together with reliance on the false statement by the plaintiff to the plaintiff's detriment. These elements and the facts therein were sufficiently delineated in Plaintiff's Complaint.

WHEREFORE, based on the aforementioned Plaintiff respectfully requests that this honorable court deny Defendant IGIC's Motion to Dismiss.

Dated: April 22, 2004

Respectfully submitted,

Advisor's Capital Investments, Inc.,

By its attorney,

David Constantino, Esq.
BBO # 645357
PO Box 307
Southbridge, MA 01550
(508) 764-7156 phone/fax

CERTIFICATE OF SERVICE

I hereby certify that on April 22, 2004,a true and correct copy of the foregoing document was served by UPS on the office for counsel for the Defendants.

David Constantino, Esq.